Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of this matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties agree that the following facts may be found and are established for purposes of this proceeding:
a. The employee-employer relationship existed between Leana Patricia Troncony and Trus Joist MacMillon at the time of the employees accident.
b. The date of the employees fatal accident was February 20, 1998.
c. AIG Claims Services, Inc. was the carrier on the risk at the time of the accident.
d. The employees average weekly wage may be determined by the Form 22 that was submitted at the hearing before the Deputy Commissioner.
e. On February 20, 1998, employee Leana Patricia Troncony was killed in an accident arising out of and in the course and scope of her employment with defendant-employer.
4. The only issue before the Commission is who is entitled to recover compensation as a result of the death of the employee pursuant to the terms and provisions of N.C. Gen. Stat. 97-38, 97-39 and 97-40.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On the date of her fatal accident, February 20, 1998, Leana Patricia Troncony (hereafter "decedent) was twenty-seven years of age. She was not married and had no children. There were no persons wholly or partially dependent upon decedent for support.
2. The parents of decedent, Gladys Montoya Troncony (now Guzman) and Jose Troncony were married in 1966, and three daughters were born of the marriage. Decedent was born on December 4, 1970, Leslie was born on June 14, 1972, and Rose Mary was born on May 11, 1967.
3. At the time of her death, decedent was survived by her mother, Gladys Guzman, who lives in Margate, Florida, and her two adult sisters, Rose Mary Marcey, who lives in Louisiana, and Leslie Davis, who lives in Charlotte, North Carolina. She was also survived by her biological father, Jose Ismael Troncony, who lives in New Orleans, Louisiana.
4. During the marriage, Mr. Troncony was often absent from the home and often drank alcohol. Ms. Guzman and Mr. Troncony separated in 1973 and were divorced by final decree issued by the 24th Judicial District Court for Jefferson Parrish in Louisiana on April 25, 1977. That decree granted permanent custody of the minor children to Gladys Troncony (Guzman) and provided that Jose Troncony would have "reasonable visitation rights. The judgment also ordered Mr. Troncony to pay $60 per week in support. There is no evidence that plaintiff Jose Troncony attempted to secure joint custody or custody of any type. Mr. Troncony was therefore not "deprived of custody.
5. Following the divorce, Mr. Troncony did not make consistent payment of the court-ordered support. By 1987, his support payments were in arrears, such that Ms. Guzman went back to court to seek an order for payment of the arrearage.
6. Ms. Guzman and her daughters struggled financially after the divorce. Ms. Guzman worked outside the home in the cosmetics business to support her family. Rose Mary, the oldest daughter, began working at age 17 to help support the family and contributed to her younger sisters educations.
7. Following the separation, Ms. Guzman and her three daughters continued to live in New Orleans, Louisiana. Although they lived in the same town, Mr. Troncony did not visit his three daughters. On some occasions when they were young, Mr. Troncony would say he was coming to visit with the girls and Gladys would get them ready, but he never appeared.
8. When decedent was in the fifth grade, she was ill and in the hospital. Although Ms. Guzman called and told him about it, Mr. Troncony did not visit her. Leslie was also sick and in the hospital in 1984, and Mr. Troncony did not visit her.
9. Since the separation, Mr. Troncony has never shown any interest in the lives of his daughters or acted as a true parent to them. He did not send any cards, letters, or gifts to his daughters over the years. He never called them on the telephone. He never attended any day-to-day events or any special events in their lives, such as their confirmation in the Catholic Church or high school graduations. Ms. Guzman never prevented Mr. Troncony from visiting his daughters, and the court order gave him visitation rights.
10. The only contact with their father after 1973 which Leslie and Rose Mary recall is a 1984 visit to the Worlds Fair in New Orleans. On this occasion, due to the lack of contact, Mr. Troncony seemed like a stranger to them. Mr. Troncony has had virtually no contact with his daughters from 1973 and continuing to date.
11. In 1988, Ms. Guzman and her daughters moved to Florida, because Ms. Guzman was seeking better employment opportunities. By this time, Rose Mary was an adult, and decedent was 18 as of December 4, 1988. The youngest, Leslie, was 16 years old.
12. The funeral services for decedent were held in New Orleans. Although he resided in New Orleans and was notified in advance of the arrangements for the wake and funeral service for decedent, Mr. Troncony did not attend either. He did not call to express any condolences or send any notes to his other daughters or to his ex-wife. About two months later, Mr. Troncony spoke with Rose Mary Marcey by telephone, after he received a letter from an attorney regarding decedents estate. They had a brief conversation in which Mr. Tronconys focus was the meaning of the letter. He did not express any sympathy or sorrow over the death of decedent.
13. Mr. Troncony failed to meet his child support obligations during the year prior to decedents majority. The Deputy Commissioner did not find the reasons given for his failure credible. Aside from his testimony before the Deputy Commissioner, there is no evidence of the health problems Mr. Troncony alleges to have suffered, or of his return to Honduras for medical treatment during that time.
14. A majority of the Full Commission declines to reverse the Deputy Commissioners credibility determinations and finds that plaintiff Jose Troncony willfully abandoned the care and maintenance of decedent and did not substantially comply with orders of the court related to decedents support in the last year of plaintiffs minority.
15. There is no evidence that Plaintiff Jose Troncony ever performed any parental duties or provided any emotional support or care for decedent.
16. At the time of the February 22, 1999 hearing before the Deputy Commissioner, plaintiff Jose Troncony was still in arrears with his child support requirements, even though his obligation to decedents mother should have terminated in 1990.
17. There was no issue as to the right of Ms. Guzman, mother of decedent, to recover benefits due to decedents death. The only issue for determination by the Commission is whether Mr. Troncony, father of decedent, was entitled to any compensation pursuant to N.C. Gen. Stat.97-40. Counsel for the Administrator of the Estate has rendered appropriate and valuable legal services on that issue.
18. At the time of her death, decedent had an average weekly wage of $612.20, yielding a compensation rate of $408.16.
***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On February 20, 1998, decedent sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. She died as a result of the injuries sustained in that accident. N.C. Gen. Stat. 97-2(6), 97-38.
2. On the date of her death, decedent was not survived by anyone who was either partially or wholly dependent upon her for support. Therefore, benefits are payable pursuant to N.C. Gen. Stat. 97-40.
3. Due to his willful abandonment of the care and support of his daughter, the decedent, Jose Troncony is not entitled to any benefits as next of kin pursuant to N.C. Gen. Stat. 97-40; Lessard v. Lessard77 N.C. App. 97, 334 S.E.2d 475 (1985); Pratt v. Bishop 257 N.C. 486,126 S.E.2d 597 (1962).
4. Ms. Guzman, mother of decedent, qualifies as the next of kin and is entitled to 400 weeks of compensation at the rate of $408.16 per week to be paid pursuant to N.C. Gen. Stat. 97-40. Lessard v. Lessard77 N.C. App. 97, 334 S.E.2d 475 (1985); Pratt v. Bishop 257 N.C. 486,126 S.E.2d 597 (1962).
5. Robert Hanners law firm has rendered valuable legal services on behalf of the Estate of Leana Patricia Troncony, particularly regarding the issue of the disqualification of Mr. Troncony. However, a contingency fee is not appropriate where there was no issue as to the right of recovery of Ms. Guzman. Even if a contingency fee were appropriate, it should be based only upon half of the amount awarded to Ms. Guzman, i.e., that portion which Mr. Troncony was disqualified from receiving. A reasonable attorneys fee of $12,000 has been established for Mr. Hanners firm, pursuant to N.C. Gen. Stat. 97-90, taking into consideration the above, as well as his statement of hours and fees involved in this case.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay compensation in a lump sum to Gladys Guzman at the rate of $408.16 per week for the period from February 20, 1998 through the date of this Opinion and Award. The balance of the 400 weeks of compensation due shall be commuted to present value and paid to Gladys Guzman in a lump sum.
2. A reasonable attorneys fee of $12,000 is approved for the law firm of Casstevens Hanner Gunter Conrad. This amount shall be deducted from the lump sum amount due to Gladys Guzman, and paid directly to her counsel.
3. Defendants shall pay the costs.
This the ___ day of September, 2000.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/________________ DIANNE C. SELLERS COMMISSIONER
DISSENTING:
S/_____________ THOMAS J. BOLCH COMMISSIONER